# CIVIL COVER SHEET

**BZ**  

JS 44 (Rev. 12/07) (cand rev 1-16-08)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS
JACOB MEDWAY

## DEFENDANTS
APPLE, INC.

**(b)** County of Residence of First Listed Plaintiff LOS ANGELES
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Lionel Z. Glancy
Glancy Binkow & Goldberg LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067 (310) 201-9150

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☒ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | | ☐ 710 Fair Labor Standards Act | ☐ 810 Selective Service |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 850 Securities/Commodities/Exchange |
| ☒ 195 Contract Product Liability | | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | **PRISONER PETITIONS** | | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | Habeas Corpus: | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | **FEDERAL TAX SUITS** | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 550 Civil Rights | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 555 Prison Condition | ☐ 871 IRS—Third Party 26 USC 7609 | **IMMIGRATION** | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | | ☐ 462 Naturalization Application | | |
| | | | ☐ 463 Habeas Corpus – Alien Detainee | | |
| | | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Section 1332

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
[X] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

[X] SAN FRANCISCO/OAKLAND    ☐ SAN JOSE

DATE 01/26/09

SIGNATURE OF ATTORNEY OF RECORD

FILED BY FAX PURSUANT TO LOCAL RULES

LIONEL Z. GLANCY (134180)
MARC L. GODINO (182689)
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Attorneys for Plaintiff*

FILED BY FAX
PURSUANT TO LOCAL RULES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB MEDWAY, Individually and on Behalf of All Other Persons Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>APPLE, INC., a California Corporation<br><br>Defendants. | CASE NO. CV 09 0330<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, by his attorneys, alleges upon personal knowledge as to his own acts, and as to all other matters upon information and belief based upon, *inter alia*, the investigation made by and through his attorneys.

## INTRODUCTION

1. This is a class action brought by Jacob Medway ("Plaintiff") against Apple, Inc. ("Apple") on behalf of a class of all consumers who purchased Apple's iPhone 3G manufactured and marketed by Apple (the "Class").

2. As detailed herein, Plaintiff brings this action for damages, restitution and other injunctive relief for misrepresentations made by Apple in the marketing, advertising and sale of the iPhone 3G.

## JURISDICTION AND VENUE

3. This action is brought as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

4. There are more than 100 class members, and the damages suffered and sought to be recovered herein total, in the aggregate, in excess of $5,000,000.

5. Apple is registered with the California Secretary of State as a corporation doing business in California, and maintains a registered agent in Cupertino, California. As such, Apple has submitted itself to process and jurisdiction of courts sitting in California, including the United States District Court, Northern District of California.

6. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332 (2005).

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because (a) Defendant maintained offices, has agents, transacts business, and is found within this judicial District; (b) Defendant's unlawful conduct occurred in this District; and (c) Defendant regularly and continuously conducted business in interstate commerce in or affecting this District.

## THE PARTIES

8. Plaintiff purchased an Apple iPhone 3G for $299.00, and entered into a network service contract with AT&T which included a premium charge for 3G network access. Plaintiff is, and at all material times was, a resident of Los Angeles County, California. Plaintiff purchased his iPhone 3G from an AT&T retail store on September 1, 2008, in Los Angeles, California.

9. Defendant Apple is, and was at all times relevant herein, a corporation doing business in the State of California, with its principal place of business located in Cupertino, California. Apple transacts business in Los Angeles County, California and at all relevant times designed, manufactured, promoted, marketed, distributed, and/or sold the iPhone 3G that is the subject of this complaint.

## CLASS ACTION ALLEGATIONS

10. Plaintiff brings this class action on behalf of himself and all others similarly situated as members of the proposed California-wide plaintiff Class. The proposed Class, which Plaintiff seeks to represent, are all individuals in California who purchased an iPhone 3G. Excluded from the Class is defendant, any entity in which defendant has a controlling interest, and any of its subsidiaries, affiliates, and officers, directors of defendant, or employees, and any legal representative, heir, successor, or assignee of defendant.

11. This action has been brought and may properly be maintained as a class action pursuant to Federal Rule of Civil Procedure 23 and California Civil Code Section 1781.

12. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes, and on that basis alleges, that thousands of persons are members of the Class. The precise number of Class members and their addresses are unknown to

1 Plaintiff. Class members may be notified of the pendency of this action by published
2 and/or mailed notice.

3     13.    There is a well-defined community of interest in the questions of law and
4 fact affecting the parties represented in this action.

5     14.    Common questions of law and fact exist as to all members of the Class.
6 These common questions predominate over the questions affecting only individual Class
7 members.

8     15.    The questions common to members of the Class are, *inter alia*:

9     a.    Whether the iPhone 3G's connectivity to the 3G network fails at
10 unacceptably high rates, is inherently defective and is not of merchantable quality;

11     b.    Whether defendant made false and/or misleading statements of fact
12 to the Class and the public concerning defects inherent in the iPhone 3G;

13     c.    Whether defendant concealed from Plaintiff, the Class and
14 consumers that the iPhone 3G's connectivity to the 3G network is subject to
15 unacceptably high failure rates, is inherently defective and is not of merchantable
16 quality;

17     d.    Whether the iPhone 3G fails to conform to defendant's product
18 specifications, which were published, disseminated and advertised to Plaintiff and the
19 Class;

20     e.    Whether defendant concealed from Plaintiff and the Class that the
21 iPhone 3G did not conform to its stated product specifications;

22     f.    Whether defendant's false and/or misleading statements of fact and
23 concealment of material facts concerning the performance and reliability of the iPhone
24 3G ability to connect to the 3G network were likely to deceive the public;

25     g.    Whether, by the misconduct set forth in this Complaint, defendant
26 has engaged in unfair, fraudulent or unlawful business practices with respect to the
27 advertising, marketing and sales of the iPhone 3G;

28

1          h.     Whether defendant violated California's Unfair Business Practices Act;

        i.     Whether defendant violated the Consumer Legal Remedies Act; and

        j.     Whether, as a result of defendant's misconduct as alleged herein, Plaintiff and the Class are entitled to damages and injunctive relief and other remedies to which Class members are entitled as a result of defendant's wrongful conduct, and, if so, the amount and nature of such relief.

16.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendant's wrongful conduct. Plaintiff has no interests antagonistic to the interests of the other members of the Class. Plaintiff and all members of the Class have sustained economic injury arising out of the defendants' violations of common and statutory law as alleged herein.

17.     Plaintiff is an adequate representative of the Class because (a) his interests do not conflict with the interests of the members of the Class he seeks to represent; (b) he has retained counsel competent and experienced in complex class action litigation; and (c) he intends to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiff and his counsel.

18.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this class action. Individualized litigation presents the potential for inconsistent or contradictory judgments. A class action presents far fewer management difficulties and provide the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## FACTUAL ALLEGATIONS

19. Apple designs, manufactures, and sells personal computers, portable digital music players, and mobile communication devices, as well as related software, services, peripherals, and networking solutions worldwide. Apple offers its services and products to businesses and consumers.

20. One such product marketed by Apple in California is its iPhone 3G, which is a mobile cellular phone which purportedly includes additional features such as a video and audio player and an Internet device which provides access to email and the Internet.

21. The "3G" designation refers to the so-called 3G wireless network which purportedly is capable of transferring data at speeds of up to 1.4 Mbps. Although 3G makes data move faster, it also uses more bandwidth than typical digital voice services.

22. AT&T is the exclusive wireless 3G network service provider for the iPhone 3G.

23. At all relevant times, Apple represented to the public, including the Class, that the iPhone 3G was a quick (due to its connectivity to the 3G network), dependable and reliable mobile telephone, that it was free from defects, and that it was of merchantable quality and workmanship.

24. Multi-functional cellular phones have become a lucrative market for companies, who are scrambling for market share in this highly competitive field.

25. To bolster their competitive position, defendants are engaging in a comprehensive advertising blitz (including radio, television, and print advertising), in an effort to convince consumers that the iPhone 3G's connectivity to the 3G network makes it superior (*i.e.*, faster) than competing phones. For example, Apple's web-site provides the following description for the iPhone 3G:

> 3G technology gives iPhone fast access to the Internet and email over cellular networks around the world. iPhone 3G also makes it possible to do more in more places: Surf the web, download email, get directions, and watch video — even while you're on a call.

http://www.apple.com/iphone/features/wireless.html

26. Apple also recently launched its advertising slogan for the iPhone 3G which is "half the price, twice the speed."

27. Similarly AT&T's web-site offers the following description of the iPhone 3G:

> iPhone 3G harnesses the power of AT&T's broad and powerful 3G mobile broadband network, which offers 3G mobile phones download speeds of up to 1.4 Mbps.

http://www.wireless.att.com/cell-phone-service/specials/iPhone.jsp

28. However, in a rush to quash the efforts of its competitors in the cellular mobile phone industry, defendant failed to disclose that a defect within the iPhone 3G prevents it from maintaining a signal on the 3G network.

29. As a result of defendant's misrepresentations, thousands of consumers who purchased Apple's iPhone 3G and accompanying 3G service from AT&T have experienced broken promises regarding the phone's transmission speed. Defendant's missteps have affected thousands of customers in California, many of whom experience 3G connectivity only a fraction of the time, if at all, that they are connected to the AT&T 3G network.

30. Despite knowledge that the iPhone 3G cannot maintain consistent 3G service, defendant continues to solicit new orders in a multimillion-dollar television and print advertising campaign for the iPhone 3G.

31. Notwithstanding its marketing and advertisement campaign's theme and the express and implicit representations that defendant would provide customers with fast 3G connectivity with their iPhone 3G, defendant has been unable to fulfill that obligation to consumers.

32. On August 11, 2008, C-Net News published an article concerning the iPhone 3G problems plaguing Apple and AT&T. The article entitled, *"Apple, AT&T mum on iPhone 3G issues"* stated in part:

> Widespread complaints about the iPhone 3G's reception have spread across the Internet in the month since Apple and AT&T released the successor to the original iPhone. The

companies insist that nothing is wrong, but the complaints have been mounting through e-mails, water-cooler discussions, and message boards on Apple's own Web site: iPhone 3G users are having trouble connecting, and staying connected, to the 3G networks in their areas.

Users say the iPhone 3G will switch between 3G networks and EDGE networks even when the device is sitting still. They'll lose reception in the middle of a call while traveling through a 3G-rich environment. Friends with other 3G phones on AT&T's network are not reporting similar problems. And the issues don't appear to be confined to AT&T's network: iPhone 3G users in other countries report similar problems with their new phones.

As you can imagine, this doesn't sit well with many who eagerly bought the iPhone 3G to take advantage of 3G networks, which Apple promises are "twice as fast" as the EDGE networks in its advertising material. "Frankly, if I knew it was going to be like this, I wouldn't have paid the extra $10 a month," said iPhone 3G owner David Howard of Provo, Utah.

Repeated attempts over the past week to get Apple and AT&T to even acknowledge the uproar--if not the issues specifically--proved pointless. Apple didn't even attempt to answer the questions, deferring inquiries to AT&T, which declared that there were absolutely no widespread problems with the iPhone 3G on its network.

"What we're seeing is that the iPhone 3G is performing very well," said Mark Siegel, a spokesman for AT&T. "I'm not denying that people are having problems. But we have to deal with these on a case-by-case basis."

It's always difficult to determine the scope of an issue posted on Internet message boards--whether or not a loud minority is blowing up a relatively minor problem into something more. But this time, lots of different people are crowding the Internet to vent their frustrations and search for answers to the reception issues, and they are finding a lot of sympathizers.

33. On August 12, 2008, Richard Windsor, an research analyst with Nomura Securities International, Inc. issued a report stating that the iPhone 3G's inability to reliably connect to the 3G network relates to a specific design defect within the phone.

34. However, when Apple replaced phones in response to customer complaints regarding the iPhone 3G's inability to connect to the 3G network, Apple simply replicated the problems by providing consumers with replacement phones and thus subject to the same issues which prompted the replacements.

35. Additionally, defendant concealed material facts concerning the iPhone 3G, including that the phone is unable to maintain a signal on the 3G network, is not of merchantable quality, and does not conform to stated specifications.

36. During the relevant period, defendant knew or should have known that the iPhone 3G was failing at unacceptably high rates. Nevertheless, defendant has not warned consumers of the problems or taken steps to prevent consumers from experiencing system failures and data losses, and has failed to warn or effectively remedy the iPhone 3G's inherent defects. Instead, and despite its knowledge of these malfunctions, defendant has and continues to remain silent about these problems, even as a significant percentage of iPhone 3Gs fail to perform adequately. To date, defendant has failed to warn customers about the risks inherent in purchasing and relying on the iPhone 3G as a mobile phone capable of maintaining a signal on the 3G network.

37. As a result of defendant's false or misleading statements and concealment of material facts, Plaintiff and the Class bought thousands of iPhone 3Gs and were unable to use these devices as advertised. The iPhone 3G's failures continue to occur.

38. Because of defendant's failure in living up to their marketing campaigns, Plaintiff and the Class have been denied 3G access, and have missed opportunities to purchase other cellular mobile phones with competing phone manufacturers. As a result of the Plaintiff and Class members contractual commitment to AT&T, they have been precluded from seeking alternative network services. As a result of defendant's egregious conduct, Plaintiff and the Class have been economically injured.

## COUNT I

### [Unfair Business Practices Act]

### Cal. Bus. & Prof. Code section 17200

39. Plaintiff, on behalf of himself and on behalf of all others similarly situated, realleges each and every allegation above as if fully set forth herein, and further alleges as follows.

40. The Unfair Business Practices Act defines unfair business competition to include any "unfair," "unlawful," or "fraudulent" business at or practice. Cal. Bus. & Prof. Code §17200. Unfair competition also includes "unfair, deceptive, untrue or misleading advertising." The Act also provides for injunctive relief and restitution for violations.

41. Throughout the Class Period, defendant committed acts of unfair competition, as defined by Business & Professions Code §17200, by falsely and inaccurately representing, among other things as previously set forth herein, the iPhone 3G's ability to access the 3G network.

42. Additionally, defendant's practice of advertising the iPhone 3G's superior 3G capabilities, when in fact the phone continued to suffer from its inability in providing 3G service constitutes an unfair business practice. Defendant's inability to meet its representations were contrary to its advertisements and therefor violated Business & Professions Code §17200.

43. Defendant's conduct is unfair in that the harm to Plaintiff and the Class arising from defendant's conduct outweighs the utility, if any, of those practices.

44. Defendant has engaged in conduct that is unlawful in that it is a violation of Business & Professions Code §§17200 and 17500, and the Consumer Legal Remedies Act, in addition to other potential statutory violations.

45. As a direct and proximate result of the acts and practices alleged above, pursuant to California Business & Professions Code §17203, Plaintiff and the Class are therefore entitled to: (a) an Order requiring defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to defendant as a result of its deceptive practices, including, but not limited to, disgorgement of all profits derived from the sale of the iPhone 3G; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, *inter alia*, *California Code of Civil Procedure* §1021.5.

///

## COUNT II

### [Deceptive Practices]

### Consumer Legal Remedies Act, California Civil Code §1750 et seq.

46. Plaintiff realleges and incorporates herein by reference each of the foregoing paragraphs.

47. The policies, acts, and practices described in this Complaint were intended to and did result in the sale of Apple iPhone 3Gs to consumers. By offering its iPhone 3G for sale to the public, defendant represented, directly or by implication, that the iPhone 3G did not have any latent defects that would substantially affect their ability to access the 3G network.

48. Defendant's practices, acts, policies, and course of conduct violated the California Consumer Legal Remedies Act, *California Civil Code* §1750 *et seq.*, (the "CLRA"), in that:

    1. Defendant represented that the iPhone 3G had characteristics, uses, benefits, or quantities which it does not have, in violation of *California Civil Code* §1770(a)(5) – specifically, defendant misrepresented the ability of the iPhone 3G to access the 3G network;

    2. Defendant represented that the iPhone 3G was of a particular standard or quality, when it is of another in violation of §1770(a)(7) of the CLRA; and

    3. The business practices engaged in by defendants that violate the CLRA include, without limitation, failing to disclose or concealing that defendants knew or had reason to know the iPhone 3G was defective.

49. Plaintiff seeks damages and restitution of all monies received by defendant as a result of sales from the iPhone 3G as provided in *California Civil Code* §1780. Plaintiff is informed and believes that the amount of said damages and restitution is unknown at this time, but will seek relief to amend this complaint at the time of trial when the same has been ascertained.

1  50.  In compliance with the provisions of Civil Code §1782, Plaintiff has given written notice to the named defendant of his intention to file a complaint for damages under Civil Code §1750, et seq. However, over 30 days have elapsed, and Defendant has failed to offer appropriate consideration or other remedy to all affected consumers as described in the written notice.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests on behalf of himself and other members of the Class, for judgment against defendants as follows:

1. An Order certifying the proposed Class herein under *Code of Civil Procedure* §382 and *Civil Code* §1781, and certifying Plaintiff as a class representative and his undersigned counsel of record to represent the Class;

2. Awarding damages including interest and/or restitution and appropriate equitable relief in favor of Plaintiff and the other class members against Defendant;

3. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees pursuant to *California Civil Code §1780(e) and California Code of Civil Procedure*§1021.5; and

4. Awarding such other and further relief as this Court may deem just and proper including any extraordinary equitable relief and/or injunctive relief as permitted by law or equity to attach, impound or otherwise restrict defendant's assets to assure Plaintiff and the members of the Class have an effective remedy.

/ / /

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: January 26, 2009

GLANCY BINKOW & GOLDBERG LLP

By: _____
Lionel Z. Glancy
Marc L. Godino

1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Attorneys for Plaintiff*